## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **GINO WILSON** (M-14190), | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 09 C 4661 |
| | ) | |
| v. | ) | Magistrate Judge |
| | ) |   Martin C. Ashman |
| **OFFICER McCULLOCH**, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Gino Wilson, filed suit, *pro se*, against Defendants, Officer McCulloch, Sheriff

Thomas Dart, and Cook County, alleging deliberate indifference to his safety while he was

detained at Cook County Jail. Presently before the Court is the Defendants' motion for summary

judgment. For the reasons stated in this order, Defendants' motion for summary judgment is

granted.

### I.   Legal Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute

as to any material fact and that the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Vision Church v.*

*Village of Long Grove*, 468 F.3d 975, 988 (7th Cir. 2006). In determining whether factual issues

exist, the court must view all the evidence and draw all reasonable inferences in the light most

favorable to the non-moving party. *Weber v. Universities Research Assoc., Inc.*, 621 F.3d 589,

592 (7th Cir. 2010). The court does not "judge the credibility of the witnesses, evaluate the

weight of the evidence, or determine the truth of the matter. The only question is whether there is a genuine issue of fact." *Gonzalez v. City of Elgin*, 578 F.3d 526, 529 (7th Cir. 2009), *citing Anderson v. Liberty Lobby*, 477 U.S. 242, 249-50 (1986).

However, Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Sarver v. Experian Information Solutions*, 390 F.3d 969, 970 (7th Cir. 2004) (citations omitted). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Egonmwan v. Cook County Sheriff's Dept.*, 602 F.3d 845, 849 (7th Cir. 2010), *quoting Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 640-41 (7th Cir. 2008).

When Defendants filed their motion for summary judgment, they included a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" as required by *Timms v. Frank*, 953 F.2d 281, 285 (7th Cir. 1992); *Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir. 1982) and Local Rule 56.2 (N.D. Ill.). This notice clearly sets out the requirements of this Court's Local Rule 56.1. In particular, the notice explains that Plaintiff's response must comply with Federal Rule of Civil Procedure 56(e) and Local Rule 56.1 (N.D. Ill.).

Local Rule 56.1(b) requires a party opposing a motion for summary judgment to file:

(3) a concise response to the movant's statement that shall contain:

(A) numbered paragraphs, each corresponding to and stating a concise summary of the paragraph to which it is directed, and

> (B) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and
>
> (B) a statement, consisting of short numbered paragraphs, of any additional facts that require denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon.

L.R. 56.1(b). The district court may require strict compliance with Local Rule 56.1. *See Ammons v. Aramark Uniform Serv., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004); *Bordelon v. Chicago School Reform Board of Trustees*, 233 F.3d 524, 527 (7th Cir. 2000) (strict compliance with the local rules governing summary judgment is upheld given the importance of local rules that structure the summary judgment process).

Although *pro se* plaintiffs are entitled to lenient standards, compliance with procedural rules is required. *Members v. Paige*, 140 F.3d 699, 702 (7th Cir. 1998) ("[R]ules apply to uncounseled litigants and must be enforced"); *Jones v. Phipps*, 39 F.3d 158, 163 (7th Cir.1994). Despite being given this notice, Plaintiff did not respond to Defendants' motion or proposed statements of fact. On October 26, 2011, the Court gave Plaintiff another opportunity to respond to Defendants' motion and proposed statements of fact and warned Plaintiff that his failure to do so could result in summary judgment being granted. Even with another opportunity to respond, Plaintiff failed to file a response to Defendants' motion or proposed statements of fact. Accordingly, Defendants' proposed statements of fact are deemed admitted. *See Chelios v. Heavener*, 520 F.3d 678, 687 (7th Cir. 2008); L.R. 56.1(b)(3)(B).

## II.  Undisputed Facts

At all relevant times, Plaintiff was detained at Cook County Jail  as a pre-trial detainee. (Defs.' 56.1(a)(3) Statement 56.1(a)(3) ¶ 6.)  On April 14, 2009, Plaintiff was assigned to Division 9, tier 2H, a super maximum security division.  (*Id.*,  ¶ 7.)  Officer Greg McCulloch was the tier officer assigned to the 3-11 shift of tier 2H on April 14, 2009.  (*Id.*, ¶ 10.)

On April 14, 2009, Plaintiff's tier was on lockdown; consequently the detainees were only allowed to go into the dayroom area for one hour, at a time, on a rotating basis.  (Defs.' 56.1(a)(3) Statement ¶ 11.)  Officer McCulloch let Plaintiff and his cellmate, Simmons, and detainees assigned to three other cells out of their cells for their recreational hour sometime after 8:05 p.m.  (*Id.*, ¶ 12.)  When it was Plaintiff's turn in the day room, his cousin and Simmons started to "line [him] up" with Magic Shave on his face and hair line.  (*Id.*, ¶ 13.) Approximately 10 minutes later, another detainee who was in the dayroom, Cheo, came "suddenly out of nowhere" and cut Plaintiff on the back of the neck.  (*Id.*, ¶¶ 15-16.)  When Cheo attacked Plaintiff, Plaintiff was surprised and he had no idea where Cheo had come from. (*Id.*, ¶ 24.)  Prior to the attack, Plaintiff had never told any tier officer, including Officer McCulloch, that Cheo was a threat to him or that he was in fear of Cheo.  (*Id.*, ¶¶ 21-22.) Plaintiff also had never had any problems with Officer McCulloch prior to the incident.  (*Id.*, ¶ 23.)

At the time of the attack, Officer Jones was assigned to tier 2G and was Officer McCulloch's back-up officer.  (Defs.' 56.1(a)(3) Statement ¶ 34.)  At approximately 8:38 p.m., Officers McCulloch and Jones were in the "bubble" when Officer McCulloch observed Plaintiff, Simmons, and Cheo swinging fists at each other.  (*Id.*, ¶ 35.)  The "bubble" is the glass-windowed room that sits five to six feet above ground level in which the correctional

officer sits to observe detainees. (*Id.*, ¶ 31.) A tier officer assigned to 2H shares the same bubble with the officer assigned to 2G. (*Id.*, ¶ 33.) A correctional officer in the bubble can observe both of the dayrooms for tiers 2H and 2G. Officer McCulloch immediately radioed for a "10-10" regarding detainees who were fighting. (*Id.*) Officer Jones also saw the disturbance and also called for staff assistance. (*Id.*, ¶ 37.) Shortly thereafter, officers and supervisors came into the dayroom, gave verbal orders to Plaintiff, Cheo, and Simmons, and cuffed all three individuals. (*Id.*, ¶ 27.) When the back-up officers arrived, the three detainees were not actually fighting, but were moving around each other, swinging their fists. (*Id.*, ¶ 43.) Subsequently, all three detainees were given a disciplinary ticket for fighting. (*Id.*, ¶ 29.) A small sharp metal object was recovered by Officer Siciliano from Cheo's mouth after he spit it out. (*Id.*, ¶ 45.) The object removed from Cheo's mouth was a handmade weapon and not a jail shaving razor. (*Id.*, ¶ 46.) Plaintiff later told the supervisor that he did not want to press charges against Cheo. (*Id.*, ¶ 29.)

For security purposes, a tier officer is not allowed to go into a dayroom when detainees are fighting and must wait for assistance to enter the dayroom. (Defs.' 56.1(a)(3) Statement ¶ 41.) Officers McCulloch and Jones never left the bubble at any time during the incident. (*Id.*, ¶ 44.)

The Office of the Sheriff of Cook County has a General Order and Procedure in place since 2003 regarding the dispensing of shaving razors to detainees. (Defs.' 56.1(a)(3) Statement ¶ 47.) The procedure provides that razors are passed out to detainees on the 11 p.m. to 7 a.m. shift by an officer and also collected at some time during the same shift by an officer. (*Id.*, ¶ 49.) Cheo was given a shaving razor on April 13, 2009, at 11:15 p.m. (*Id.*, ¶ 48.) The razor was collected from Cheo by jail personnel that same night at approximately 11:55 p.m. (*Id.*)

### III.   Analysis

Plaintiff brings individual capacity claims against both McCulloch and Sheriff Dart, alleging they were deliberately indifferent to his safety by failing to protect him from harm.

Jail officials have a duty to protect pretrial detainees from violence by other prisoners. *See Farmer v. Brennan*, 511 U.S. 825, 833 (1988); *Grieveson v. Anderson*, 538 F.3d 763, 775 (7th Cir. 2008); *Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006).  To succeed on a claim based on an officer's alleged failure to protect, Plaintiff must demonstrate that the officer was deliberately indifferent to the fact that Plaintiff was in serious risk of being harmed.  *See Grieveson*, 538 F.3d at 775; *Pinkston*, 440 F.3d at 889.  Conduct by the officer that is simply negligent or inadvertent is not actionable under Section 1983.  Instead, the correctional officer must know of a substantial risk of serious harm and he must fail to take reasonable measures to prevent that harm from occurring.  *See Pinkston*, 440 F.3d at 889; *Henderson v. Sheahan*, 196 F.3d 839, 845 (7th Cir. 1999).  Defendants must have known of a substantial risk of serious harm to Plaintiff and they must have failed to take reasonable measures to prevent that harm from occurring.  *See Pinkston*, 440 F.3d at 889.

Plaintiff has not demonstrated that either Defendant knew of a substantial risk of serious harm to Plaintiff posed by his attacker.  Prior to the attack, there were no interactions or incidents between Plaintiff and Cheo.  Plaintiff did not know Cheo prior to the attack and was surprised when he was attacked by Cheo "out of nowhere."  Plaintiff never notified any correctional officer or Sheriff Dart of threats from Cheo.

Regrettably, "[p]risoners are dangerous (that's why many are confined in the first place). . . .  Some level of brutality and sexual aggression among them is inevitable no matter what the guards do."  *Birch v. Jones*, No. 02 C 2094, 2003 WL 21210107, *3 (N.D. Ill. May 21,

2003) (Manning, J.), quoting *McGill v. Duckworth*, 944 F.2d 344, 348 (7th Cir. 1991).  "[A]n unfortunate random act of violence in a prison . . . does not impose liability on prison officials." *Washington v. LaPorte County Sheriff's Department*, 306 F.3d 515, 519 (7th Cir. 2002). "[P]risons are dangerous places.  Inmates get there by violent acts, and many prisoners have a propensity to commit more.  Guards cannot turn away persons committed by the courts; nor do individual guards have any control over crowding and other systemic circumstances." *Riccardo v. Rausch*, 375 F.3d 521, 525 (7th Cir. 2004).  Plaintiff's conclusory assertions aside, the complaint does not suggest dangers so pervasive as to render the Defendants liable for the random attack.  *See, e.g., Washington v. LaPorte County Sheriff's Department*, 306 F.3d 515 (7th Cir. 2002).

While Plaintiff pleads in his amended complaint that Officer McCulloch was not in the bubble when the attack occurred and that someone failed to retrieve a razor from Cheo, Plaintiff has failed to support either allegation and the undisputed facts demonstrate the contrary.  *See Goodman v. National Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010) (summary judgment is the "put up or shut up" time in litigation).

Plaintiff has also failed to demonstrate that Officer McCulloch's response to the incident was unreasonable.  An officer is not required to place himself at risk by breaking up a fight between detainees.  *See Guzman v. Sheahan*, 495 F.3d 852, 858 (7th Cir. 2007); *Peate v. McCann*, 294 F.3d 879, 883 (7th Cir. 2002).  A lone prison guard or correctional officer is not required to take an unreasonable risk in attempting to break up a fight.  *See Guzman*, 495 F.3d at 858 (recognizing that a deviation from standard procedure, when an officer continued to take steps toward stopping the incident, could not be characterized as deliberate indifference).

- 7 -

In the instant case, as soon as the officers became aware of the situation, a 10-10 was called so additional officers could assist in getting control over the area. As soon as back-up arrived, the fight was broken up.

Accordingly, Plaintiff has failed to demonstrate that the Defendants were deliberately indifferent to his safety in their individual capacities.

Claims filed against government officers in their official capacity are actually claims against the government entity for which the officers work. *See Kentucky v. Graham*, 473 U.S. 159, 167 (1985); *Guzman v. Sheahan*, 495 F.3d 852, 859 (7th Cir. 2007). A governmental entity is liable for damages under Section 1983 only if the plaintiff can show that the alleged constitutional deprivation occurred as a result of an official policy, custom, or practice. *See Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 692 (1978). Unconstitutional policies or customs generally take three forms: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a usage or custom with the force of law; or (3) a person with final policy-making authority caused the injury. *Brokaw v. Mercer County*, 235 F.3d 1000, 1013 (7th Cir. 2000).

Plaintiff has failed to demonstrate that he was harmed as a result of an expressed policy, a widespread practice, or by a person with final policy-making authority. In fact, the undisputed facts demonstrate the opposite - that a policy is in effect for the distribution and retrieval of razors to avoid their use by detainees as weapons. In addition, the weapon retrieved from Cheo and used to cut Plaintiff was not a razor that had not been properly retrieved. The undisputed facts show that the razor provided to Cheo the night before the attack was retrieved that same night. Furthermore, even if Plaintiff had been harmed by a razor that had not been

properly retrieved the night before, the one-time failure of the policy to work does not demonstrate an unconstitutional policy or custom. *See Gustafson v. Jones*, 117 F.3d 1015, 1022 (7th Cir. 1997); *Hossman v. Blunk*, 784 F.2d 793, 796-97 (7th Cir. 1986).

In conclusion, no material facts are in dispute, and Defendants have established that they are entitled to judgment as a matter of law. No reasonable trier of fact could find that Defendants acted with deliberate indifference to the Plaintiff's safety or that he was harmed because of unconstitutional policy or custom. Accordingly, Defendants' motion for summary judgment is granted.

If Plaintiff wishes to appeal this final judgment, he may file a notice of appeal with this court within thirty days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues Plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If Plaintiff does choose to appeal, he will be liable for the $455 appellate filing fee irrespective of the outcome of the appeal. *Evans v. Illinois Dept. of Corrections*, 150 F.3d 810, 812 (7th Cir. 1998). Furthermore, if the appeal is found to be non-meritorious, Plaintiff may also be assessed a "strike" under 28 U.S.C. § 1915(g). The Plaintiff is warned that, pursuant to that statute, if a prisoner has had a total of three federal cases or appeals dismissed as frivolous, malicious, or failing to state a claim, he may not file suit in federal court without prepaying the filing fee unless he is in imminent danger of serious physical injury.

## IV. <u>Conclusion</u>

For the foregoing reasons, Defendants' motion for summary judgment [56] is granted. The Clerk is directed to enter judgment in favor of the Defendants. The case is terminated.

- 9 -

**ENTER ORDER:**

_____
**MARTIN C. ASHMAN**
**Dated:** January 5, 2012.                    United States Magistrate Judge